UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM IRVING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:24-CV-1288-NCC |
| ) | |
| MAKALA DROPE, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the motion of self-represented Plaintiff William Irving for leave to commence this civil rights action pursuant to 42 U.S.C. § 1983 without prepayment of the required filing fee. ECF No. 2. Having reviewed the motion and the financial information submitted in support, the Court has determined Plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.70. *See* 28 U.S.C. § 1915(b)(1). Additionally, the Court has reviewed the complaint and will dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed *in forma pauperis*, Plaintiff submitted a copy of his certified Missouri Department of Corrections Account Statement. ECF No. 3. A review of Plaintiff's account from the relevant six-month period indicates an average monthly deposit of $8.50 and an average monthly balance of $2.71. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $1.70, which is 20 percent of Plaintiff's average monthly deposits.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff brings this action on a Prisoner Civil Rights Complaint form pursuant to 42 U.S.C. § 1983 against eight employees of the Eastern Reception and Diagnostic Correctional Center ("ERDCC") in their individual capacities only: (1) Sergeant Makala Drope, Correctional Officer II; (2) Terence Anderson, Functional Unit Manager; (3) Brent Renk, Correctional Officer III; (4) Tim Freeman, Assistant Warden; (5) Richard Adams, Superintendent/Warden; (6) Heather Cofer, Deputy Warden; (7) Brian Boyer; and (8) Lucas Wells, Case Manager. ECF No. 1.

In October of 2023, Plaintiff states he was placed in a housing unit supervised by Defendant Drope. *Id.* at 7. Plaintiff claims that once Drope discovered he was an "awarded and published poet," she began to ask him for "poetry writings" and "erotic literature." *Id.* at 7, 12. Plaintiff asserts "[i]t was heavily rumored throughout the prison that Sgt. Drope was 'selling prisoners sex' for extra income" and she was "caught having sex with a prisoner." *Id.* at 8, 12.

3

Plaintiff alleges he submitted legal mail addressed to the Innocence Project to a non-defendant correctional officer. *Id.* at 7. Plaintiff claims Drope subsequently found the mail and prevented it from being sent because of his refusal to provide her "with continuing erotic literature." *Id.* at 7-8, 11. Plaintiff speculates Drope shredded and trashed his mail. *Id.* at 11. Plaintiff attaches an affidavit from an inmate who attests he saw Drope "go in the Control Bubble[,] get the Priority Mail Box of Legal Documents[,] and take it into the Classification area." ECF No. 1-1 at 3.

Plaintiff was subsequently assigned to a new cell with a different cellmate. ECF No. 1 at 8. He claims that "no room inspection was done" despite the fact that knives were oftentimes lodged "in toilet stool lines." *Id.* at 8-9. At some point after the transfer, Plaintiff states he had issues with a clogged toilet and asked for it to be repaired. *Id.* at 9. On November 20, 2023, Drope informed Plaintiff that they found a knife in the toilet line. *Id.* Plaintiff denied ownership of the weapon. *Id.* Drope allegedly told Plaintiff: "You shouldn't have stopped writing for me, and you shouldn't have wrote me up – you're going to the hole." *Id.*

On December 8, 2023, a due process proceeding was held before Defendants Anderson and Renk regarding the conduct violation Plaintiff received for possession of dangerous contraband. *Id.* at 9-10. Plaintiff alleges they violated his constitutional rights when they refused to consider two witness statements he wished to introduce, one from his cellmate and one from a correctional officer. *Id.* at 10. On December 19, 2023, a "Classification Hearing Committee headed by [Defendants Boyer and Renk] assigned [him] to ad-seg" for the conduct violation. *Id.* Plaintiff claims they erred in doing so because Defendant Freeman had approved of a dismissal. *Id.* On January 16, 2024, Plaintiff claims Defendant Wells told Defendant Boyer that it was common for

4

knives to be lodged in toilet lines and, as such, Boyer should have discontinued his administrative segregation status. *Id.* at 10-11. Plaintiff alleges Boyer ignored the advice. *Id.* at 11. It appears from the allegations that Plaintiff was assigned to administrative segregation for approximately three months. *Id.* at 10, 12 (plaintiff indicates he was assigned to administrative segregation on December 19, 2024, which was "discontinued" on March 12, 2024). Plaintiff claims his cellmate was also charged with the same violation and sent to administrative segregation.

Plaintiff asserts Defendants Adams and Cofer were "placed on notice of violative conducts by a number [of] complaints throughout Makala Drope's employment record (from other staff and prisoners), grievances, as well as the kite from [him]self," but they "failed to take disciplinary actions against Drope and the other [D]efendants." *Id.* at 12. Plaintiff ends his Statement of the Claim with the notation: "Immient [sic] Danger hit on me." *Id.*

For relief, Plaintiff seeks a declaratory judgment, an injunctive order, as well as compensatory and punitive damages. *Id.* at 13, 15. Further, on October 10, 2024, the Court received three handwritten documents titled, "Memorandum of Law in Support of Motion for a TRO and Preliminary Injunction," "Declaration in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction," and "Order to Show Cause and Temporary Restraining Order." ECF Nos. 7, 7-1, and 7-2. Notably, Plaintiff did not file an actual Motion. Within the documents, Plaintiff asks the Court to issue an order preventing defendants from subjecting him:

> to extortion; mail obstruction per 'theft' of a Priority Mail Box of Legal Documents; retaliation; Denial of Due Process per Falsified Conduct Violation Report; Denial of Due Process per Unimpartial [sic] Tribune and a refusal to call witnesses and subjection to punitive segregation by prison staff and who is presently still being subjected to gravely unsafe conditions; continued extortions; theft of ongoing

5

> mails; unimpartial [sic] tribunes; denial of legal from property and staff circumventing to assist prisoners with carrying out 'hit' on plaintiff.

ECF No. 7 at 1. Nowhere in the complaint or subsequently filed documents does Plaintiff provide any facts to support a "hit" has been placed against him or who ordered the "hit."

## Discussion

Having carefully reviewed the complaint, the Court concludes that Plaintiff's claims against Defendants must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### I.   Defendants Anderson, Renk, Freeman, and Boyer

As to Defendants Anderson and Renk, Plaintiff specifically alleges they violated his due process rights by denying his request to call two witnesses at the hearing related to the conduct violation he received for being in possession of contraband. Plaintiff additionally alleges Defendants Renk, Freeman, and Boyer should not have approved administrative segregation as a punishment.

An inmate who makes a due process challenge to his placement in administrative segregation must make a threshold showing that the deprivation of which he complains imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff makes no such assertions in the complaint. Plaintiff's complaint that he spent approximately three months in administrative segregation does not, by itself, indicate that he suffered the type of atypical and significant hardship that might conceivably give rise to a liberty interest. *Id.* at 485-86 (no atypical and significant hardship where inmate spent 30 days in solitary confinement): *Hemphill v. Delo*, 124 F.3d 208 (8th Cir. 1997) (unpublished) (same; 30 days in disciplinary segregation, and approximately 290 days in administrative segregation); *Wycoff v. Nichols,* 94 F.3d 1187, 1190 (8th Cir. 1996) (same; 10 days

6

disciplinary detention and 100 days in maximum security cell). As a result, Plaintiff's allegations against Defendants regarding his placement in administrative segregation fail to state a claim upon which relief can be granted.

In addition, the Eighth Circuit has held that a prisoner has no due process right to call witnesses during a conduct violation hearing. *Spann v. Lombardi*, 65 F.4th 987, 992 (8th Cir. 2023) (if a prison chooses to hold hearings prior to an inmate's placement in administrative segregation, inmates do not have a constitutional right under the applicable informal due process standard to call witnesses or to require prison officials to interview witnesses). *See also Strickland v. Delo*, 758 F. Supp. 1319, 1321-22 (E.D. Mo. 1991) (no due process right to call witnesses related to the charge being reviewed); *Perry v. Wagganer*, 2018 WL 2298825, at *3 (E.D. Mo. May 21, 2018) (same). "[A]ll that is required to satisfy due process is the existence of 'some evidence' that supports the disciplinary decision." *Doxley v. Wallace*, 2019 WL 2568672, at *7 (E.D. Mo. June 21, 2019) (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). "The conduct violation adduced at the hearing amounts to 'some evidence.'" *Id.* (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (stating that a corrections officer's description of events constitutes some evidence upon which a prison disciplinary committee could determine that an inmate violated a prison rule)). "Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir. 1986). As such, due process is satisfied as long as "some evidence supports the decision by the prison disciplinary board." *Id.*

Further, as a general rule, mere placement in administrative segregation and being held there does not constitute cruel and unusual punishment. Thus, Plaintiff's housing assignment does not violate the Eighth Amendment based upon the length of confinement, absent other circumstances. The Eighth Circuit has upheld significantly longer periods of segregation without finding them to constitute a violation of the Eighth Amendment. *See Brown v. Nix*, 33 F.3d 951, 955 (8th Cir. 1994) (upheld 9-year sentence to segregation not a violation of the Eighth Amendment); *see also Herron v. Schriro*, 11 Fed. Appx. 659, 662 (8th Cir. 2001) (unpublished) (Eighth Amendment claims rejected upon finding no sufficiently serious deprivation, even considering the 13 years of administrative segregation confinement).

Therefore, for the reasons discussed above, Plaintiff's individual capacity claims against Defendants Anderson, Renk, Freeman, and Boyer must be dismissed.

**II.     Defendant Lucas Wells**

Plaintiff alleges Defendant Wells told Defendant Boyer that it was common for knives to be lodged in toilet lines of cells and, as such, Boyer should have discontinued Plaintiff's administrative segregation status. ECF No. 1 at 10-11. This claim fails simply because the allegation does not rise to the level of a constitutional violation and, thus, fails to state a claim or cause of action under § 1983. Plaintiff's allegation appears to assert that Defendant Wells advocated for him to no avail. The Court cannot find any constitutional issue with a caseworker attempting to assist an inmate during the disciplinary process.

**III.    Defendant Drope**

Plaintiff appears to allege two claims against Defendant Drope. First, he alleges she disposed of his legal mail addressed to the Innocence Project. Second, he appears to claim that she

8

issued him a false conduct violation regarding the discovery of contraband in his cell's toilet in retaliation for his refusal to write her erotic poetry.

Under the First Amendment, the freedom to petition the government for redress of grievances includes the right of access to courts. *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 524-25 (2002). To state a claim premised upon denial of access to the courts, a plaintiff must demonstrate that he suffered an "actual injury" or actual prejudice to a nonfrivolous claim. *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996); *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996). Speculation that injuries might occur or could have occurred is insufficient. *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) ("Absent an articulation of how the alleged wrongful conduct actually blocked [the prisoner's] access to filing a complaint, or caused a filed complaint to be deficient, [the prisoner's] alleged injuries are merely speculative."). "To prove actual injury, a prisoner must demonstrate a nonfrivolous legal claim was frustrated or impeded." *Jones-El v. Godert*, 2019 WL 6727492, at *10 (E.D. Mo. Dec. 11, 2019).

Here, Plaintiff's allegations do not establish that he suffered an "actual injury" as required to state a plausible claim premised upon his right of access to the courts. *Cf. Tatum v. E. Reception Diagnostic & Corr. Ctr.*, 2012 WL 1605706, at *3 (E.D. Mo. May 8, 2012), *aff'd* (Oct. 4, 2012) (plaintiff's allegation that defendant tore up his legal mail is not actionable without showing an actual injury). Plaintiff claims he attempted to send documents to the Innocence Project, not a court. Attached to his complaint is a letter from the Innocence Project, in which they acknowledged receipt of two sets of documents he had previously sent them, confirmed they did not receive the documents Plaintiff claimed Drope had interfered with, and advised him that his case was not yet accepted by the Innocent Project and was still in line to be evaluated. ECF No. 1-1 at 10. At the

9

time he received this letter, Plaintiff could have resent the documents at issue as there were no established court deadlines or even a viable legal claim to be filed. Plaintiff's allegations simply do not establish that he suffered an "actual injury" as required to state a plausible claim premised upon his right of access to the courts.

As to the second allegation, a mere false conduct violation is not actionable under § 1983. *See Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983) (per curiam). *See also Willis v. Ciccone*, 506 F.2d 1011, 1018 (8th Cir. 1974) ("the role of the district court is not to afford a de novo review of disciplinary [action taken against an inmate; otherwise,] the federal court would assume the task of retrying all prison disciplinary disputes"); *Mueller v. Norman*, 2011 WL 1330816, at *2 (E.D. Mo. Apr. 7, 2011) (allegation regarding a disputed conduct violation does not articulate a constitutional or federal statutory violation); *Smith v. Taylor*, 2008 WL 151611, at *2 (E.D. Mo. Jan. 14, 2008) ("There is no indication that the issuance of the false conduct violations implicates constitutionally-protected interests; it simply does not constitute an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 at 472).

Although Plaintiff claims Drope issued him a conduct violation because he would not write her poetry, he admits his cellmate was also charged with the same violation and sent to administrative segregation. Thus, the facts do not support that his punishment was targeted or isolated to him. It thus follows that Defendant Drope cannot be liable for issuing a false conduction violation when the violation was also applied to his cellmate and a disciplinary hearing determined that both inmates were responsible for the conduct.

IV.     **Defendants Adams and Cofer**

Plaintiff identifies Defendant Adams as the Warden or Superintendent, and Defendant Cofer as the Deputy Warden. He alleges they were aware of Defendant Drope's conduct, but failed to act. Plaintiff's claims against Adams and Cofer must be dismissed because he has not established that Drope is liable for a constitutional violation.

To the extent that plaintiff is relying on their positions as Warden and Deputy Warden to establish their responsibility, such a claim must fail. Vicarious liability is inapplicable to § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (stating that in order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury). In particular, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Here, Plaintiff has failed to allege any failure to train or supervise on the part of Adams or Cofer.

Moreover, and most significantly, Plaintiff's allegations against Defendant Drope were found to not state a claim for relief. Thus, Adams and Cofer cannot be held liable for conduct which was found to be within the parameters of the constitution.

**Remaining Motions**

Plaintiff has also filed a motion for the appointment of counsel, ECF No. 6, and a motion requesting that the Court serve the complaint upon the named Defendants, ECF No. 5. Additionally, as mentioned above, Plaintiff has filed a "Memorandum of Law in Support of Motion for a TRO and Preliminary Injunction," ECF No. 7, which could be interpreted as a motion for such actions. Because the complaint fails to state a claim upon which relief can be granted, there is no basis for granting these motions. As a result, they will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial filing fee of $1.70 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's motion requesting service of complaint and summons [ECF No. 5] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel [ECF No. 6] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's "Memorandum of Law in Support of Motion for a TRO and Preliminary Injunction," construed as a motion for a temporary restraining order and preliminary injunction [ECF No. 7], is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint because the complaint fails to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Opinion, Memorandum and Order.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of October, 2024.